**The SINGER COMPANY,**
**Plaintiff-Appellant,**

v.

**CONTINENTAL ILLINOIS ENERGY**
**DEVELOPMENT CORPORATION,**
**Defendant-Appellee.**

**No. 85–4715.**

United States Court of Appeals,
Fifth Circuit.

April 4, 1986.

H.M. Holder, Shreveport, La., for plaintiff-appellant.

M. Thomas Arceneaux, Shreveport, La., for defendant-appellee.

Before GEE, RUBIN, and GARZA, Circuit Judges.

GEE, Circuit Judge:

In February 1982, the Singer Company ("Singer") executed five mineral leases affecting 74,221 acres of land in Madison Parish, Louisiana. The leases provided that as of their effective date, February 1, 1983, the lessee, Tomlinson Companies ("Tomlinson"), would owe a lease bonus rental of $40.00 per leased acre.

On January 11, 1983, the leases were amended to make the lease bonus rentals payable in five installments during 1983, rather than in the original lump sum. Two weeks later, however, in a letter dated January 25, the parties agreed that one-half of each installment due under the amended leases would be paid in accordance with the installment schedule, but that the

"remaining one-half of the respective installment payment [sic] provided for [in the amended leases] shall be made by [the execution by] Tomlinson Interests, Inc. of a promissory note dated January

---

31, 1983, payable to the Singer Company, and delivered to the Singer Company on, or before February 5, 1983, in the principal amount of $1,484,443.60 . . . ."

As required by the January 25 letter agreement, one-half of each installment payment was duly paid on the five dates set in the installment schedule of the amended leases. Likewise, the promissory note for the remaining half of the debt was executed and delivered. Tomlinson later defaulted on the note and took bankruptcy.

Before doing so, however, Tomlinson assigned the five leases to Continental Illinois Energy Development Corporation ("Continental"). This action began when Singer sued Continental to recover the amount represented by Tomlinson's note. The district court rendered summary judgment in Continental's favor, and Singer now appeals. For reasons to be given, we affirm the judgment of the district court.

Singer's theory of recovery is straightforward. It is based on Section 128 of the Louisiana Mineral Code, which provides:

> To the extent of the interest acquired, an assignee or sublessee acquiring the rights and powers of the lessee and becomes responsible directly to the original lessor for the performance of the lessee's obligations.[1]

Because Continental acquired Tomlinson's obligations under the leases, Singer argues, it is liable for the one-half of the bonus rentals represented by the unpaid note.

Continental responds that the original debt has been extinguished, either through performance or novation. Agreeing with the former contention, we need not address the latter.

At the outset, it is important to understand precisely what kind of juridical creature the January 25 letter agreement was. What it represented was a *conjunctive* obligation. Louisiana Civil Code Article 2063 (1870) provides, in pertinent part:

> A conjunctive obligation is one in which the several objects in it are connected by a copulative, or in any manner which shows that all of them are generally comprised in the contract. This contract creates as many different obligations as there are different objects . . .[2]

Hence, the letter agreement of January 25 was a conjunctive obligation with six objects: the five installment payments[3] and the delivery of a promissory note.

Louisiana Civil Code Art. 2130 (1870) provides: "Obligations are extinguished: By payment. . . ." Art. 2131 (1870) provides:

> By payment is meant, not only the delivery of a sum of money, when such is the obligation of the contract, *but the performance of that which the parties respectively undertook, whether it be to give, or to do.* (emphasis supplied).

Unquestionably, five separate objects of the January 25 letter were extinguished by the five timely installment payments. Was the balance of the obligation—Tomlinson's delivery of a promissory note to Singer—a contract to give or to do, such that performance constituted payment for purposes of Art. 2131? We think Civil Code Art. 1906 (1870) directly addresses this question. It provides:

> A contract for the delivery of a promissory note, payable to bearer, or payable to order, and already endorsed, or any other negotiable paper of the same nature, also

1. West.La.Stat.Ann., R.S. 31:128.

2. In Act No. 331 of its 1984 Regular Session, the Louisiana Legislature overhauled the obligations sections of the Civil Code (Titles III and IV of Book III). The revised articles became effective on January 1, 1985. Because this matter arose, and the present action was brought, before that date, we apply the pre-1985 (1870) codal articles on obligations.

Article 2063's successor in the 1984 revision is Article 1807, which provides, in pertinent part: "An obligation is conjunctive when it binds the obligor to multiple items of performance that may be separately rendered or enforced. In that case, each item is regarded as the object of a separate obligation. . . ."

3. See La.Civil Code Art. 2065 (1870).

endorsed, or transferrable by delivery only, comes under the description of a contract *to give*.... (emphasis in the original).

It is abundantly clear, then, that the January 25 letter agreement's sixth object—the delivery of a promissory note by Tomlinson to Singer—was a contract to give. The giving of the promissory note having been so performed, we hold that the entirety of the conjunctive obligation represented by the January 25 letter has been extinguished.

Sec. 128 of the Mineral Code, upon which Singer based the theory of its claim, is in reality the basis for Singer's undoing. Under Sec. 128, Continental, Tomlinson's assignee, acquired Tomlinson's rights. Since Tomlinson's obligation to make rental payments was extinguished by the five installment payments and the delivery of the note, Continental stands in Tomlinson's shoes in this respect and is entitled to—and does—assert the same defense.

Citing Civil Code Art. 2266 (1870) [4] and the venerable Louisiana Public Records Doctrine,[5] Singer finally argues that since the January 25 agreement was not recorded for registry in the conveyance records of Madison Parish, the agreement has no effect as to third parties. The flaw in this reasoning, however, is that Continental, as the assignee of Tomlinson, stands in the shoes of Tomlinson, and thus there exists privity of contract between Singer and Continental. The law of registry has no bearing on this case. See *J.F. Auderer Laboratories v. Deas*, 223 La. 923, 67 So.2d 179, 183 (1953). The judgment of the district court is therefore

AFFIRMED.

---

**4.** Art. 2266 of the 1870 Code has been redesignated as La.R.S. 9:2756 by Act 331 of the 1984 Regular Session of the Louisiana Legislature. See note 2, supra. Art. 2266 (1870) provides:
All sales, contracts, and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only

affect third parties from the time of the recording. The recording shall have effect from the time when the act is deposited in the proper office, and endorsed by the proper officer.

**5.** See *McDuffie v. Walker*, 125 La. 152, 51 So. 100 (La.1909) and its progeny.